1

2

3

4

5

6

7

8            UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JESSE MORENO,                          No.  1:23-cv-00789-SKO (HC)

12              Petitioner,                 **ORDER DIRECTING CLERK OF COURT
                                            TO ASSIGN DISTRICT JUDGE**

13        v.
                                            **FINDINGS AND RECOMMENDATION
14                                          TO DENY PETITION FOR WRIT OF
     KATHLEEN ALLISON,                      HABEAS CORPUS**
15
                Respondent.                 **[THIRTY DAY OBJECTION DEADLINE]**
16

17

18        Petitioner is a state prisoner proceeding *pro se* and *in forma pauperis* with a petition for

19   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He is currently in state prison serving a life

20   sentence for 35 felony offenses arising from his molestation of his daughter between the ages of

21   11 to 17.  He raises numerous claims challenging his conviction and sentence.  As discussed

22   below, the Court finds the claims to be without merit and recommends the petition be **DENIED.**

23   **I.        PROCEDURAL HISTORY**

24        On September 22, 2017, a Fresno County jury found Petitioner guilty of the following 35

25   counts: two counts of committing a lewd or lascivious act on a child under 14 years of age (Cal.

26   Pen. Code, § 288(a); counts 1–2); two counts of aggravated sexual assault of a child under 14

27   years of age and seven or more years younger (Cal. Penal Code § 269(a)(4); counts 3–4); 12

28   counts of forcible oral copulation on a minor 14 years or older (former Cal. Penal Code §

288a(c)(2)(C); counts 5–16); 11 counts of oral copulation by means of intoxication (former Cal. Penal Code § 288a(i); counts 17–18, 20–23, 27–30 & 33); four counts of rape by means of intoxication (Cal. Penal Code § 261(a)(3); counts 19, 24, 31 & 32); two counts of sexual penetration by means of intoxication (Cal. Penal Code § 289(e); counts 25 & 34); one count of attempted sodomy by means of intoxication (Cal. Penal Code §§ 664/286(i); count 26); and one count of using a minor for sex acts (Cal. Penal Code § 311.4(c); count 35). See People v. Moreno, 2021 WL 2025021, at *1 (Cal. Ct. App. 2021). On March 1, 2018, the court sentenced him to a total determinate term of 159 years and a total indeterminate term of 30 years to life, for an aggregate prison term of 189 years to life in prison. Id.

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"). On May 21, 2021, the appellate court affirmed the judgment. Id. Petitioner filed a petition for review in the California Supreme Court. On July 28, 2021, the California Supreme Court summarily denied the petition. (Doc. 7-3 at 205.[1])

On June 21, 2022, Petitioner filed a habeas petition in the Fresno County Superior Court. (Doc. 7-4 at 9-16.) On August 24, 2022, the court denied the petition. (Doc. 7-4 at 6-8.) On September 12, 2022, Petitioner filed a habeas petition in the Fifth District Court of Appeal. (Doc. 7-4 at 68.) On November 17, 2022, the petition was denied on procedural grounds. (Doc. 7-4 at 67.) On January 12, 2023, he filed a habeas petition in the California Supreme Court. (Doc. 7-4 at 78.) The petition was denied on April 26, 2023. (Doc. 7-4 at 77.)

On May 23, 2023, Petitioner filed the instant habeas petition for writ of habeas corpus in this Court. (Doc. 1.) Respondent filed an answer on July 3, 2023. (Doc. 8.) Petitioner did not timely file a traverse.

## II.    FACTUAL BACKGROUND[2]:

Petitioner and A.M. had one child together, S.M. Their relationship ended when S.M. was four or five years old, and S.M. visited Petitioner most weekends. When S.M. was 11 years old,

---

[1] Docket citations are to ECF pagination.

[2] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will rely on the Fifth DCA's summary of the facts as set forth in Moreno, 2021 WL 2025021, at *2-3. Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

1   Petitioner began talking to her about sex.  He exposed his penis to her, showed her pornography

2   and demonstrated how to put on a condom.  He told her he wanted to teach her "how to be a good

3   girlfriend," by which he meant knowing how to perform oral sex.

4         The first instance of abuse S.M. recalled was Petitioner putting his mouth on her vagina

5   and asking her to touch his penis. She was 11 or 12 years old. She did not recall when Petitioner

6   first had her orally copulate his penis, but she testified he told her that boys would like her if she

7   knew how to do it. Although it was all "a blur," she stated that something sexual in nature

8   occurred every time she visited him over the six-year period between the ages of 11 and 17 years

9   old.

10        S.M. did not see Petitioner every weekend, but during middle school and into the

11   beginning of high school prior to when she turned 14, her visits involved sexual touching and oral

12   copulation.  Petitioner told S.M. he had a medical condition that caused him to be unable to

13   urinate and if she did not help him urinate by orally copulating him, he would have to go to the

14   hospital.

15        When S.M. was 14 or 15 years old, Petitioner began making her eat chocolate-covered

16   strawberries that tasted like alcohol and drink alcohol mixed with red punch afterward.  S.M.

17   could see "very small" "black pebbles" in the drink that looked like a black powder to her.

18   Petitioner told her the strawberries would make her pass out and the alcohol would keep her

19   awake.  S.M. testified that the drink made her dizzy and confused, and it caused her to have

20   complete memory loss.

21        Petitioner began engaging in sexual intercourse with S.M. when she was 16 years old. She

22   recalled one incident when Petitioner made her ingest the drink and she woke up the next

23   morning wearing only a long T-shirt that did not belong to her.  She recalled telling Petitioner she

24   did not want to have sex with him and then waking up with him on top of her.  She began to cry,

25   and he told her not to cry.  When she woke up the next morning, she felt ill, her vagina and lower

26   abdomen were very sore, and her pubic hair had been shaved off.  She had no memory of what

27   happened other than when she woke to Petitioner on top of her and started to cry, but Petitioner

28   told her they had had intercourse that night and asked if she was "okay down there."

1    S.M. testified that Petitioner had a camera he would hold in the bathroom.  She would tell

2    him to stop, and he would tell her it was not on and put it down on the counter.  He always picked

3    it back up again, though, and she knew he recorded their sexual acts because he would later watch

4    the recordings on the television.

5    When S.M. was 17 years old, she disclosed the abuse to a friend and then to her mother,

6    who reported it to police. S.M. thereafter made two recorded phone calls to Petitioner, which

7    were played for the jury. Petitioner did not deny the crimes; he denied having bad intentions and

8    stated he "apologize[d] for everything that ... [she felt] was not right" and for "bring[ing] [her]

9    into something that ... [she was] not ready for ...."

10    When police executed the search warrant, they located 107 pornographic videos of

11    Petitioner and S.M., along with still images that lacked any identifying information.  They also

12    located red punch; Smirnoff vodka, which S.M. said Petitioner sometimes poured in her drinks;

13    and chocolate-covered strawberries in the refrigerator.  They did not locate any black powder and

14    did not confiscate or test the strawberries.

15    **III.    DISCUSSION**

16    A.    Jurisdiction

17    Relief by way of a petition for writ of habeas corpus extends to a person in custody

18    pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or

19    treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

20    529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as

21    guaranteed by the United States Constitution.  The challenged conviction arises out of the Fresno

22    County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. §

23    2254(a); 28 U.S.C.§ 2241(d).

24    On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

25    1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

26    enactment.  Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases

27    filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA

28    and is therefore governed by its provisions.

4

1          B.       Legal Standard of Review

2          A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless

3   the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision

4   that was contrary to, or involved an unreasonable application of, clearly established Federal law,

5   as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was

6   based on an unreasonable determination of the facts in light of the evidence presented in the State

7   court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);

8   Williams, 529 U.S. at 412-413.

9          A state court decision is "contrary to" clearly established federal law "if it applies a rule

10  that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set

11  of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a

12  different result."  Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-

13  406).

14         In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that

15  an "unreasonable application" of federal law is an objective test that turns on "whether it is

16  possible that fairminded jurists could disagree" that the state court decision meets the standards

17  set forth in the AEDPA.  The Supreme Court has "said time and again that 'an unreasonable

18  application of federal law is different from an incorrect application of federal law.'"  Cullen v.

19  Pinholster, 563 U.S. 170, 203 (2011).  The petitioner "must show far more than that the state

20  court's decision was 'merely wrong' or 'even clear error.'"  Shinn v. Kayer, ___ U.S. ___, ___ ,

21  141 S.Ct. 517, 523, 2020 WL 7327827, *3 (2020) (quoting Virginia v. LeBlanc, 582 U. S. 91, 93,

22  137 S.Ct. 1726, 1728 (2017) (per curiam)).  Rather, a state prisoner seeking a writ of habeas

23  corpus from a federal court "must show that the state court's ruling on the claim being presented

24  in federal court was so lacking in justification that there was an error well understood and

25  comprehended in existing law beyond any possibility of fairminded disagreement."  Richter, 562

26  U.S. at 103 (emphasis added); see also Kayer, 141 S.Ct. at 523, 2020 WL 7327827, *3.  Congress

27  "meant" this standard to be "difficult to meet."  Richter, 562 U.S. at 102.

28         The second prong pertains to state court decisions based on factual findings.  Davis v.

5

1   Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)).

2   Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the

3   petitioner's claims "resulted in a decision that was based on an unreasonable determination of the

4   facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539

5   U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's

6   factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable

7   among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-

8   1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

9          To determine whether habeas relief is available under § 2254(d), the federal court looks to

10   the last reasoned state court decision as the basis of the state court's decision. See Ylst v.

11   Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.

12   2004). "[A]lthough we independently review the record, we still defer to the state court's

13   ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

14          The prejudicial impact of any constitutional error is assessed by asking whether the error

15   had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v.

16   Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)

17   (holding that the Brecht standard applies whether or not the state court recognized the error and

18   reviewed it for harmlessness).

19          C.      Review of Petition

20                  1.      Ground One – Speedy Trial

21          Petitioner first claims he was denied his constitutional right to a speedy trial based on the

22   trial court's violation of statutory time limitations. Petitioner raised this claim on direct review to

23   the California Court of Appeals. He did not renew the claim in the California Supreme Court on

24   direct review. Petitioner raised it by habeas petition, but he did so only as a violation of state law.

25   He did not present the federal basis for his claim. In the last reasoned decision, the appellate

26   court denied the claim as follows:

27          **A. Preliminary Hearing**

28                  **1. Procedural Background**

6

Defendant was arrested for the crimes in this case in May 2012. Relevant to his speedy trial claim, the criminal complaint against him was dismissed and refiled on September 9, 2015, and he was arraigned and entered a plea of not guilty. On September 14, 2015, defendant entered a general time waiver and his counsel of record, Mr. Kinney, moved to withdraw from the case.

On October 28, 2015, Mr. Quade, who had been appointed to represent defendant, notified the court that his office had declared a conflict and Mr. Lamanuzzi was to be appointed, but he was specially appearing on Mr. Lamanuzzi's behalf. During the hearing, defendant personally revoked his general time waiver and invoked his speedy trial rights. The court noted a timeout date of December 28, 2015, and set the matter for a pre-preliminary hearing on November 18, 2015, and a preliminary hearing on November 30, 2015. [Fn.6]

> [Fn.6] Defendants states he was entitled to a preliminary hearing no later than December 27, 2015, but that day fell on a Sunday. (Cal. Rules of Court, rule 1.10(b).)

On November 18, 2015, Mr. Quade made a special appearance on behalf of Mr. Green, who was then defendant's counsel of record. The matter was confirmed for preliminary hearing on November 30, 2015.

On November 30, 2015, Mr. Lindahl, who was representing defendant, declared a conflict and notified the court that Mr. Sok would be representing defendant. The court noted the timeout date of December 28, 2015, assuming a 60-day clock, and continued the preliminary hearing to December 14, 2015.

On Monday, December 14, 2015, Mr. Renge appeared on behalf of defendant. He represented that Friday afternoon, he accepted the appointment upon receipt of a call from the court administrator, but he was not notified that the case timed out on December 28, 2015. Mr. Renge stated that he was willing to take the case but, based on the voluminous amount of discovery, he would not be prepared to proceed in time if defendant wished to exercise his right to a speedy preliminary hearing. After finding it constituted a reasonable amount of time to allow Mr. Renge to prepare, the court continued the preliminary hearing to January 13, 2016, over defendant's objection.

On January 13, 2016, the parties appeared and were ready for the preliminary hearing. However, Mr. Renge was scheduled to deliver a closing argument in another courtroom that afternoon. He informed the court that defendant objected to any continuances. The trial court found good cause to trail the matter one day due to Mr. Renge's unavailability, and the preliminary hearing commenced on January 14, 2016.

On the second day of the preliminary hearing, January 19, 2016, defendant made a motion to substitute new counsel, which was denied after an in camera hearing. (*People v. Marsden* (1970) 2 Cal.3d 118, 123–124.) Defendant then made a motion to represent himself, which the court granted. (*Faretta v. California* (1975) 422 U.S. 806, 819–821 (*Faretta*).) At the conclusion of the preliminary hearing, defendant was held to answer on all counts.

On May 31, 2016, defendant, by then represented by Mr. Bijev, filed a motion to dismiss the information based on violation of the 60-day deadline in section 859b. The trial court denied the motion on June 22, 2016, stating that the statute does not

7

provide for withdrawal of a waiver; on constitutional grounds, any prejudice to defendant must be balanced against the justification for the delay; and defendant had been through "a succession of attorneys who subsequently declared conflicts."

Now before us on appeal, defendant claims that pursuant to section 859b, he is entitled to dismissal under section 1387 because the trial court failed to hold his preliminary hearing within 60 days of the revocation of his general time waiver, and the court erred when it read a good cause or reasonable time exception into the 60-day rule. He also claims that the court later erred when it denied his motion for dismissal based on the violation of the time constraints set forth in section 859b. The People contend, without citation to relevant authority, that, assuming the 60-day timeout date for the preliminary hearing was December 28, 2015, the trial court properly found good cause to hold the hearing within a reasonable time after that date. They also contend that defendant failed to show prejudice arising from the delay.

As discussed next, the statutory 60-day rule does not include a good cause exception. (*E.g.*, *Favor v. Superior Court* (2021) 59 Cal.App.5th 984, 992 (*Favor*).) However, assuming without deciding that defendant's withdrawal of his general time waiver had the effect of triggering the 60-day deadline under section 859b, where defendant's statutory right to a preliminary hearing within 60 days directly conflicted with his constitutional right to effective assistance of counsel, his statutory right must yield. (*People v. Kowalski* (1987) 196 Cal.App.3d 174, 179 (*Kowalski*).) [Fn.7] Furthermore, in contrast with pretrial relief, a defendant seeking relief for a speedy trial right violation after conviction must demonstrate prejudice as a result of the delay. (*People v. Clark* (2016) 63 Cal.4th 522, 552 (*Clark*); *People v. Lomax* (2010) 49 Cal.4th 530, 556–557 (*Lomax*).) Defendant fails to do so, which is fatal to his claim.

> [Fn.7] In *People v. Love*, the court stated that "the Legislature [has not] created a provision [in section 859b] for the withdrawal of properly entered waivers." (*People v. Love* (2005) 132 Cal.App.4th 276, 285.) We do not reach the issue of whether defendant's revocation of his general time waiver had the effect of restarting the 60-day clock under section 859b, as the People do not advance that argument and no prejudicial error resulted in any event.

### 2. Analysis

#### a. Section 859b

"The state and federal Constitutions guarantee a defendant facing criminal charges the right to a speedy trial. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) This right protects an accused from facing an unduly lengthy period in which criminal charges are pending." (*People v. Hajjaj* (2010) 50 Cal.4th 1184, 1193, citing *People v. Lewis* (2001) 25 Cal.4th 610, 628–629 (*Hajjaj*).) Section 859b is "'supplementary to and a construction of the constitutional right to a speedy trial'" (*People v. Standish* (2006) 38 Cal.4th 858, 870; accord, *Favor, supra*, 59 Cal.App.5th at p. 989), and provides that "[b]oth the defendant and the people have the right to a preliminary examination at the earliest possible time" (§ 859b). The statute "'reflects a clear legislative intention to prevent prolonged incarceration prior to a preliminary hearing.'" (*People v. Standish, supra*, at p. 870.)

"To effectuate the right to a speedy preliminary hearing, section 859b contains two

8

deadlines. [¶] First, the preliminary hearing 'shall be held within 10 court days' of the arraignment. (§ 859b.) If the defendant is in custody, the charges must be dismissed if the hearing does not occur within that time, unless an exception applies. (*Ibid*.) The 10-day deadline has two exceptions. The defendant may 'personally waive[ ]' his right to an examination within 10 court days. (*Id*., subd. (a).) Alternatively, the prosecution may 'establish[ ] good cause' for a continuance beyond that period. (*Id*., subd. (b).)

"The second section 859b deadline is an outer limit of 60 days from the date of arraignment to hold the preliminary hearing. If the hearing 'is set or continued more than 60 days from the date of the arraignment,' the charges shall be dismissed. (§ 859b.) As to this deadline, there is only one exception: the defendant may 'personally waive[ ]' his or her right to a preliminary examination within the 60 days. (*Id*., subd. (a).) In contrast to the 10-day deadline, the 60-day limit contains no good cause exception. The 60-day limit protects the right to a speedy preliminary hearing by ensuring that, even with good cause, the hearing may not be continued indefinitely. [Citation.] It also ensures that criminal cases are moved expeditiously through the courts." (*Favor*, 59 Cal.App.5th at pp. 989–990, fn. omitted; accord, *People v. Superior Court (Arnold)* (2021) 59 Cal.App.5th 923, 932 (*Arnold*); *People v. Figueroa* (2017) 11 Cal.App.5th 665, 673–675 (*Figueroa*).)

### b. Statutory Deadline Must Yield to Constitutional Right to Effective Assistance of Counsel

Notwithstanding the People's contrary argument, courts have repeatedly held that "[t]he 60-day rule ... 'contains no good-cause exception.'" (*Favor, supra*, 59 Cal. App.5th at p. 992 [recognizing that impossibility might excuse compliance with 60-day deadline]; accord, *Arnold, supra*, 59 Cal.App.5th at pp. 940–941; *Lacayo v. Superior Court* (2020) 56 Cal.App.5th 396, 399–400 (*Lacayo*); *Ramos v. Superior Court* (2007) 146 Cal.App.4th 719, 731 (*Ramos*).) However, relevant here, courts have on occasion recognized a limited exception to the statutory time constraints under section 859b where "'constitutional principles and principles affecting the administration of justice'" are at play. (*People v. Lind* (2014) 230 Cal.App.4th 709, 714 [a defendant may not divest the trial court of jurisdiction and then complain his preliminary hearing was not held within 60 days] (*Lind*); accord, *Kowalski, supra*, 196 Cal.App.3d at p. 179 [constitutional right to counsel prevails over right to preliminary hearing within 10 days]; *Curry v. Superior Court* (1977) 75 Cal.App.3d 221, 225–226 [right to self-representation prevails over right to preliminary hearing within 10 days] (*Curry*); cf. *Arnold, supra*, at p. 941 [distinguishing *Lind* on ground that motion to disqualify prosecutor's office, pending for more than one year, did not divest trial court of jurisdiction and, therefore, did not toll statutory 60-day deadline after the defendants declined to waive time any further].) We find the decision in *Kowalski* instructive and conclude the principle it articulates applies here where the slight delay at issue was the direct result of the conflict between defendant's right to a speedy preliminary hearing and his constitutional right to counsel.

The Sixth Amendment of the United States Constitution guarantees criminal defendants both the right to self-representation (*People v. Johnson* (2012) 53 Cal.4th 519, 525–526, citing *Faretta, supra*, 422 U.S. 806), and, along with article I, section 15 of the California Constitution, the right to effective assistance of counsel free from conflicts of interest (*People v. O'Malley* (2016) 62 Cal.4th 944, 1001, citing *People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 309). During the course of this case, defendant represented himself at times and he was represented

9

by counsel at other times. Between his revocation of his general time waiver on October 28, 2015, and the first appearance by Mr. Renge on December 14, 2015, defendant was represented by at least six attorneys, including Mr. Renge; and during the preliminary hearing, defendant moved for the appointment of yet another new attorney. Unsuccessful in that regard, he then moved to represent himself pursuant to *Faretta*. At the time, defendant was charged with 38 felony counts and in addition to his existing file, Mr. Renge represented that defendant wanted him to review 4,500 pages of phone records.

The trial court recognized the conflict between defendant's right to a speedy preliminary hearing and his right to effective assistance of counsel, as did Mr. Renge, who expressed his unwillingness to render ineffective assistance of counsel by proceeding with the preliminary hearing without adequate time to prepare. Thus, "'[the] trial court was confronted with the difficult problem of procedurally navigating this case to avoid the Scylla of delay and the Charybdis of ineffective and inadequate representation.'" (*Kowalski, supra*, 196 Cal.App.3d at pp. 178–179, quoting *People v. Powell* (1974) 40 Cal.App.3d 107, 148.)

As explained in *Kowalski*, "[d]efendant has the right to effective assistance of counsel at his preliminary hearing, this being a 'critical stage' of the proceedings. [Citation.] And counsel must actually be prepared and effective. [Citation.] Defendant also has a right to a speedy trial and section 859b implements this right. [Citation.] If the time period is violated the information must be dismissed. [Citation.] However, defendant's statutory rights are '"merely supplementary to and a construction of the Constitution. [Citations.]" They do not carry the force of weight of constitutionally mandated imperatives'" and must yield in a conflict between the two. (*Kowalski, supra*, 196, Cal.App.3d at p. 179; accord, *Curry, supra*, 75 Cal.App.3d at p. 226; see *Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 961 [statute yields to Constitution in a conflict].)

"'"[A] criminal defendant may not juggle his constitutional rights in an attempt to evade prosecution. He may not demand a speedy trial and demand adequate representation, and, by the simple expedient of refusing to cooperate with his attorney, force a trial court to choose between the two demands, in the hope that a reviewing court will find that the trial court has made the wrong choice."'" (*Kowalski, supra*, 196 Cal.App.3d at p. 181, quoting *People v. Johnson* (1980) 26 Cal.3d 557, 570, fn. 13.) "The result would be ... ludicrous if [a] defendant could play his right to effective assistance of counsel against his statutory right to a preliminary hearing .... Furthermore, a more serious violation of [a] defendant's rights would result if [the] defendant had a preliminary hearing [within the statutory deadline,] but failed to have effective representation at that hearing." (*Kowalski, supra*, at pp. 179–180.)

Thus, where, as here, the two rights conflict, the statutory deadline set in section 859b must be subordinated to the constitutional right to effective assistance of counsel. (*Kowalski, supra*, 196 Cal.App.3d at p. 179; accord, *Curry, supra*, 75 Cal.App.3d at p. 226 ["[S]ection 859b must ... be subordinated to the constitutional right of self-representation."]; see *Lind, supra*, 230 Cal.App.4th at p. 715 ["A defendant's constitutional right to a speedy preliminary hearing is not infringed by the suspension of the 60-day rule for the time it takes to resolve that defendant's challenge to the impartiality of the judge assigned to his or her case."].) We observe that *Kowalski* confronted the failure to hold a preliminary hearing within 10 days while we confront the 60-day deadline. However, the parties neither addressed the rule in *Kowalski* nor advanced any arguments that suggest the principle underlying the decision in *Kowalski* is inapplicable to the facts of this

case.

Mr. Renge accepted appointment in this case and made his first appearance on December 14, 2015. Due to the recency of his appointment, the number of felony counts, and the need to review more than "the bare bones police reports" in a very serious child molestation case that exposed defendant to indeterminate life terms, Mr. Renge needed time to prepare so as to render *effective* assistance of counsel. Accepting that the timeout date was December 28, 2015, defendant's preliminary hearing commenced on January 14, 2016, only one month after Mr. Renge accepted the appointment and approximately two weeks after the timeout date. Thus, the delay in this case was minimal and was tethered to providing Mr. Renge a brief period of time to prepare for the hearing.

As in *Kowalski*, "counsel was not attempting to postpone the hearing indefinitely," and "[n]othing in the record suggests he was being 'lazy or indifferent.'" To the contrary, "he was 'pursuing his client's best interests in a competent manner.'" (*Kowalski, supra*, 196 Cal.App.3d at p. 181.) Further, the short delay was not attributable to stalling by the prosecution or scheduling issues with the trial court. (*Ibid.*)

Accordingly, we reject defendant's claim that the trial court erred by failing to hold his preliminary hearing within 60 days following the withdrawal of his general time waiver. (*People v. Brooks* (2017) 3 Cal.5th 1, 39 [we review ruling, not reasoning]; *Figueroa, supra*, 11 Cal.App.5th at p. 673 [we examine ruling to determine if it was erroneous as matter of law].) We express no view on what the outer limits of the application of this principle might be. The inquiry is necessarily fact specific and it suffices to reiterate that the delay at issue here was only two weeks, approximately, and was attributable to newly appointed counsel's need to prepare in a very serious, multiple-count felony case.

**b.    No Prejudice**

We also conclude that defendant has not shown prejudice. He argues that a violation of the 60-day deadline under section 859b entitles him to relief without any showing of prejudice and he asserts the People's reliance on *Clark* is misplaced. However, *Ramos* and *Figueroa*, cited by defendant for the proposition that prejudice is not required to obtain relief, are inapposite.

In *Ramos*, the defendant filed a petition for a writ of mandate compelling dismissal of the amended complaint against her and although the Court of Appeal dismissed the petition as moot given the defendant's subsequent entry of a time waiver, it stated that the superior court should have granted the defendant's petition for dismissal under section 859b and no prejudice analysis was required. (*Ramos, supra*, 146 Cal.App.4th at pp. 737–738.) In *Figueroa*, the People challenged the trial court's dismissal of the complaint under section 859b for failure to hold a preliminary hearing within 60 days and the appellate court affirmed. (*Figueroa, supra*, 11 Cal.App.5th at p. 670.) Thus, neither decision cited by defendant concerned a challenge under section 859b to a posttrial judgment. (See e.g., *Favor, supra*, 59 Cal.App.5th at pp. 987–988 [granting the defendant's petition for writ mandating dismissal of complaint for violation of 60-day rule under § 859b]; *Arnold, supra*, 59 Cal.App.5th at p. 927 [denying People's petition for writ of mandate compelling superior court to vacate order dismissing complaints against the defendants for violation of § 859b's 60-day rule]; *Lacayo, supra*, 56 Cal.App.5th at p. 397 [granting writ of mandate and directing trial court to set aside information].)

11

Under the California Constitution, defendant is not entitled to have judgment set aside absent a showing "that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) The California Supreme Court has explained that "[a]lthough a defendant seeking pretrial relief for a speedy trial violation is not required to make an affirmative showing of prejudice [citation], the situation is different after judgment. [Citations.] 'Upon appellate review following conviction, ... a defendant who seeks to predicate reversal of a conviction upon denial of his right to speedy trial must show that the delay caused prejudice: this court, in reviewing the judgment of conviction, must "weigh the effect of the delay in bringing defendant to trial or the fairness of the subsequent trial itself."'" (*Lomax, supra*, 49 Cal.4th at p. 557, quoting *People v. Johnson, supra*, 26 Cal.3d at p. 574.)

This was the point subsequently made by the California Supreme Court in *Clark* in the context of section 859b. (*Clark, supra*, 63 Cal.4th at p. 552.) While here, in contrast with the defendant in *Clark*, defendant objected in the trial court and sought dismissal, he did not pursue mandamus relief and the issue is before us on appeal following conviction rather than on a pretrial writ. (*Ibid.*; see *People v. Wilson* (1963) 60 Cal.2d 139, 149 [proper remedy for enforcing speedy trial rights is petition for writ of mandate prior to trial].) Thus, even if we assume error occurred, defendant's claim fails on the alternate ground that he has not demonstrated the error resulted in a miscarriage of justice.

**B. Trial**

### 1. Procedural Background

Following the preliminary hearing, the information was filed on January 26, 2016. Defendant, proceeding in pro per, waived time and after several continuances at his request, he waived formal arraignment, pled not guilty and entered a general time waiver on March 25, 2016.

More than one year later, on June 9, 2017, defendant, again proceeding in pro per, withdrew his time waiver, invoked his speedy trial rights and requested the appointment of counsel. The trial court appointed Mr. Bijev to represent defendant. Trial had previously been set for August 31, 2017, and there was a discussion, left unresolved, regarding whether the 60-day clock began running from the withdrawal of the time waiver or from the present trial date.

On June 14, 2017, Mr. Bijev moved to withdraw from the case due to preexisting travel plans that interfered with his ability to proceed with trial prior to a timeout date of August 8, 2017, and defendant's unwillingness to waive time. The court discussed defendant's competing constitutional rights to a speedy trial and effective assistance of counsel with him, relieved Mr. Bijev, and set a tentative trial date of July 27, 2017. On June 15, 2017, the court appointed Mr. Beshwate, conditionally pending a conflicts check, but on June 20, 2017, Mr. Beshwate notified the court he was unable to accept appointment.

The court then appointed Mr. Kharazi to represent defendant on June 21, 2017, and tentatively set the trial date for September 7, 2017, which was beyond what the court and prosecutor by then agreed was the timeout date of August 8, 2017. However, the court found that the short delay was reasonable given the need to balance defendant's right to a speedy trial with his right to effective assistance of counsel. Jury trial thereafter commenced on September 7, 2017, with Mr. Kharazi

12

1   representing defendant.

2   On appeal, defendant claims that the trial court abused its discretion when it found good cause to extend the trial date beyond the 60-day timeout date under section

3   1382. The People argue there was no error and no prejudice to defendant.

4   **2. Analysis**

5   "In California, one of the principal statutes implementing the constitutional right to a speedy trial is section 1382." (*Hajjaj, supra*, 50 Cal.4th at p. 1193.) Pertinent

6   here, section 1382 provides that, unless good cause is shown, an action shall be dismissed if "a defendant is not brought to trial within 60 days of the defendant's

7   arraignment on an indictment or information ...." (§ 1382, subd. (a)(2).) An exception exists if the defendant enters a general time waiver, but "[i]f the

8   defendant, after proper notice to all parties, later withdraws, in open court, his or her waiver in the superior court, the defendant shall be brought to trial within 60

9   days of the date of that withdrawal." (*Id.*, subd. (a)(2)(A).)

10   The California Supreme Court has recognized that "section 1382 does not define good cause, 'but numerous California appellate decisions that have reviewed good-

11   cause determinations under this statute demonstrate that, in general, a number of factors are relevant to a determination of good cause: (1) the nature and strength of

12   the justification for the delay, (2) the duration of the delay, and (3) the prejudice to either the defendant or the prosecution that is likely to result from the delay.

13   [Citations.] Past decisions further establish that in making its good-cause determination, a trial court must consider all of the relevant circumstances of the

14   particular case, "applying principles of common sense to the totality of circumstances ...." [Citations.] The cases recognize that, as a general matter, a trial

15   court "has broad discretion to determine whether good cause exists to grant a continuance of the trial" [citation], and that, in reviewing a trial court's good-cause

16   determination, an appellate court applies an "abuse of discretion" standard. [Citations.]' " (*Hajjaj, supra*, 50 Cal.4th at pp. 1197–1198, quoting *People v.*

17   *Sutton* (2010) 48 Cal.4th 533, 546.)

18   "Good cause within the meaning of section 1382 exists, for example, when the delay beyond the statutory period is caused by the conduct of the defendant or

19   occurs for his or her benefit, or there are unforeseen circumstances such as unexpected illness, unanticipated unavailability of counsel, or the absence of a

20   witness despite due diligence to secure his or her attendance." (*Hajjaj, supra*, 50 Cal.4th at p. 1198.)

21   In this case, defendant revoked his time waiver on June 9, 2017, and requested the

22   appointment of counsel. After appointing and relieving two attorneys, the trial court appointed Mr. Kharazi on June 21, 2017, and determined the 60-day timeout

23   date was August 8, 2017. Over defendant's objection, the court found good cause to set trial for September 7, 2017, in view of Mr. Kharazi's need to prepare and

24   defendant's competing right to effective representation.

25   A trial court abuses its discretion when it acts " " "in an arbitrary, capricious, or patently absurd manner that result[s] in a manifest miscarriage of justice." " "

26   (*People v. Jones* (2013) 57 Cal.4th 899, 924, quoting *People v. Hovarter* (2008) 44 Cal.4th 983, 1004.) "If counsel seeks reasonable time to prepare a defendant's

27   case, and the delay is for defendant's benefit, a continuance over the defendant's objection is justified." (*Lomax, supra*, 49 Cal.4th at p. 556.) As previously

28   discussed, this was a serious multi-felony case that exposed defendant to the

13

1    possibility of spending the rest of his life in prison, Mr. Kharazi was newly
     appointed, and the trial date was set only one month beyond the 60-day timeout
2    date. Under these circumstances, the trial court did not abuse its discretion.
     Moreover, defendant fails to show he suffered any prejudice as a result of the one-
3    month delay, which is also fatal to his claim. (*Id.* at pp. 556–557.)

4    Moreno, 2021 WL 2025021, at *3-10.

5                        *a.  Legal Standard*

6            The Court first notes that Petitioner did not raise the federal basis for his claim to the

7    California Supreme Court.  Petitioner raised only statutory time violations; thus, only his

8    statutory claims are exhausted.  In that respect, the claim is not cognizable, because federal

9    habeas relief is only available if a petitioner alleges he is in custody in violation of the

10   Constitution or laws or treaties of the United States.  Estelle v. McGuire, 502 U.S. 62, 67-68

11   (1991).  In any case, the Court may deny an unexhausted claim if it is plainly without merit,

12   which as discussed below, is the case herein. See 28 U.S.C. § 2254(b).

13           A speedy trial is a fundamental right guaranteed the accused by the Sixth Amendment to

14   the Constitution and imposed by the Due Process Clause of the Fourteenth Amendment on the

15   states. Klopfer v. North Carolina, 386 U.S. 213, 223 (1967).  No per se rule has been devised to

16   determine whether the right to a speedy trial has been violated.  Instead, courts must apply a

17   flexible "functional analysis."  Barker v. Wingo, 407 U.S. 514, 522 (1972).  In Barker, the

18   Supreme Court enunciated the factors to be considered in determining whether the Sixth

19   Amendment right to a speedy trial has been denied: (1) the length of the delay; (2) the reason for

20   the delay; (3) the defendant's assertion of the right; and (4) the prejudice resulting from the delay.

21   Id. at 531-33.  None of the four factors are either a necessary or sufficient condition for finding a

22   speedy trial deprivation.  Id. at 533. They are related factors and must be considered together with

23   such other circumstances as may be relevant.  Id.

24                   *b.  Analysis – Preliminary Hearing Delay*

25           Petitioner first complains of the delay in holding his preliminary hearing after

26   arraignment.  As noted above, Petitioner was arraigned on September 9, 2015, and he entered a

27   general time waiver on September 14, 2015.  On October 28, 2015, Petitioner revoked his general

28   time waiver and invoked his speedy trial rights.  Thereafter, Petitioner was represented by six

                                        14

1    different attorneys due to various conflicts, with the sixth attorney being assigned the case on

2    December 14, 2015.  In light of the complexity of the case and a time conflict, the Court

3    scheduled the preliminary hearing for January 14, 2016.  Thus, the relevant time period at issue is

4    the approximately two and one-half months from October 28, 2015, to January 14, 2016.

5           When using the first Barker factor to analyze a speedy trial claim, the Supreme Court

6    acknowledged that lower courts have generally found post-accusation delay "presumptively

7    prejudicial" at least as it approaches one year.  Doggett v. United States, 505 U.S. 647, 652 n. 1

8    (1992).  In its further analysis of the first Barker factor, the Ninth Circuit has determined that a

9    six-month delay, though "not very long", is a "borderline case" sufficient to trigger an inquiry

10   into the remaining three Barker factors. United States v. Valentine, 783 F.2d 1413, 1417 (9th

11   Cir.1986); see also United States v. Simmons, 536 F.2d 827, 831 (9th Cir.1976).  However, the

12   Ninth Circuit has stated that a delay of "less than five months . . . . cannot be considered

13   'presumptively prejudicial' so as to even trigger the balancing and require and examination of the

14   other three factors."  United States v. Nance, 666 F.2d 353, 360-61 (9th Cir. 1982) (citing United

15   States v. Diaz-Alvarado, 587 F.2d 1002, 1005 (9th Cir. 1978), cert. denied, 440 U.S. 927 (1979)

16   (five month delay insufficient in itself to show violation of right)).  The Ninth Circuit noted that

17   there is a "general consensus among the courts of appeals that eight months constitutes the

18   threshold minimum."  United States v. Gregory, 322 F.3d 1157, 1162 n.3 (9th Cir. 2003).

19   Therefore, the alleged two and one-half months delay here was not a violation of Petitioner's

20   Sixth Amendment speedy trial rights.

21                        *c.  Analysis – Trial Delay*

22          Petitioner also complains of the delay in commencement of trial.  After several

23   continuances and time waivers, Petitioner withdrew his time waiver on June 9, 2017.  Trial did

24   not commence until September 7, 2017.  Petitioner complains that this three-month period

25   violated his speedy trial rights.

26          As with the preliminary hearing delay, the three-month period does not reach the

27   threshold to trigger a balancing of the Barker factors and is presumptively reasonable.  Even

28   combining the trial delay with the preliminary hearing delay, the length of time is insufficient for

                                                  15

1    a Sixth Amendment violation.

2         Moreover, the remaining <u>Barker</u> factors do not support Petitioner's claim.  The second

3    factor under <u>Barker</u> is "whether the government or the criminal defendant is more to blame" for

4    the delay.  <u>Doggett</u>, 505 U.S. at 651.  Here, the delay was caused by the defense.  Numerous

5    attorneys experienced conflicts, and the newly-appointed attorneys required time to prepare, lest

6    they render ineffective assistance.  The third factor was satisfied because Petitioner did invoke his

7    speedy trial rights.  The fourth factor also weighed against Petitioner because he failed to

8    demonstrate any prejudice resulting from the short delays.  Petitioner did not allege that the delay

9    caused any of his specific witnesses to become unavailable, that any specific witnesses forgot

10   important facts, or that any potential evidence was destroyed.

11        Even if all the <u>Barker</u> factors are considered, they do not support Petitioner's claim that his

12   speedy trial right was violated.  Consequently, the state court's denial of petitioner's claim was

13   neither contrary to nor an unreasonable application of federal law.

14                    *d.  Ineffective Assistance of Counsel*

15        Petitioner also complains that he received ineffective assistance of counsel for counsel's

16   actions in failing to object to the time delays. Clearly, the time delays were for Petitioner's own

17   benefit so counsel could adequately prepare a defense.  In fact, as pointed out by one of

18   Petitioner's attorneys, waiving time could itself be considered ineffective assistance under the

19   circumstances.  The claim thus fails because counsel cannot be faulted for failing to raise a

20   meritless argument.  <u>See</u> <u>Rupe v. Wood</u>, 93 F.3d 1434, 1444-45 (9th Cir. 1996) (defense counsel's

21   failure to raise a meritless argument or to take a futile action does not constitute ineffective

22   assistance of counsel); <u>James v. Borg</u>, 24 F.3d 20, 27 (9th Cir. 1994) ("Counsel's failure to make

23   a futile motion does not constitute ineffective assistance of counsel."); <u>Toomey v. Bunnell</u>, 898

24   F.2d 741, 743-44 (9th Cir. 1990) ("[P]etitioner must further show a reasonable probability that,

25   but for counsel's errors, the result of the proceeding would have been different.... In short, we find

26   the prospects of success ... too remote for counsel's failure to have pressed [the issue] to have

27   constituted a [S]ixth [A]mendment violation.")

28

                                      16

1                  2.       Ground Two – Unreasonable Search and Seizure

2         Petitioner next contends that his Fourth Amendment rights against unreasonable search

3 and seizure were violated by a search of his residence wherein still images and some 107

4 pornographic videos of himself and the victim were discovered.  Petitioner disputed the

5 authenticity of a search warrant, the allegedly unlawful seizure of a key used to enter the

6 residence, and the allegedly unlawful execution of the warrant on Petitioner's person.  Petitioner

7 did not raise the claim on direct review or in his habeas petition to the California Supreme Court

8 (Docs. 7-3 at 210-223; 7-4 at 80-87).  Thus, the claim is unexhausted.  Nevertheless, the Court

9 may reject the claim if it is plainly without merit, which as discussed below, is the case herein.

10 See 28 U.S.C. § 2254(b).

11                  *a.  Fourth Amendment Claims Not Cognizable*

12         A federal district court cannot grant habeas corpus relief on the ground that evidence was

13 obtained by an unconstitutional search and seizure if the state court has provided the petitioner

14 with a "full and fair opportunity to litigate" the Fourth Amendment issue.  Stone v. Powell, 428

15 U.S. 465, 494 (1976); Woolery v. Arvan, 8 F.3d 1325, 1326 (9th Cir. 1993), *cert. denied*, 511

16 U.S. 1057 (1994).  The only inquiry this Court can make is whether petitioner had a fair

17 opportunity to litigate his claim, not whether petitioner did litigate nor even whether the court

18 correctly decided the claim.  Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996); see also

19 Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990) (holding that because Cal. Penal Code §

20 1538.5 provides opportunity to challenge evidence, dismissal under Stone was necessary).

21         The policy behind the Stone Court's analysis is that the exclusionary rule is applied to stop

22 future unconstitutional conduct of law enforcement.  Stone, 428 U.S. at 492.  However, excluding

23 evidence that is not untrustworthy creates a windfall to the defendant at a substantial societal cost.

24 Id. at 489-90; Woolery, 8 F.3d at 1327-28.  Thus, the Ninth Circuit has described the rationale for

25 this rule by saying:

26            The holding is grounded in the Court's conclusion that in cases where a petitioner's
           Fourth Amendment claim has been adequately litigated in state court, enforcing

27            the exclusionary rule through writs of habeas corpus would not further the
           deterrent and educative purposes of the rule to an extent sufficient to counter the

28            negative effect such a policy would have on the interests of judicial efficiency,

comity and federalism.

Woolery, 8 F.3d at 1326; Stone, 428 U.S. at 493-494.

Here, Petitioner's Fourth Amendment claims were thoroughly litigated through a suppression hearing in the Fresno County Superior Court.  (Doc. 7-2 at 128-153.)  The Court finds that the state court provided Petitioner with a "full and fair opportunity to litigate" his Fourth Amendment claim.  Pursuant to Stone v. Powell, the Court cannot grant habeas relief, and the claim should be denied.

Even if the Fourth Amendment claims were considered, the state court's rejections were clearly not unreasonable.  Petitioner complained that the warrant signed by the superior court judge was not the same warrant served at Petitioner's home.  The state court found no support for the claim.  Petitioner speculated that it was impossible for the judge and the officer to have signed the warrant at the same time, but Petitioner supplied no evidence to support the claim.  In fact, the judge noted that it was not impossible and fairly routine.  Petitioner also alleged that the key used to go into the residence was obtained unlawfully.  The judge reasonably found that any error was not prejudicial, because the officers had a valid search warrant to enter the residence.  Finally, Petitioner contended he was not served with a complete copy of the warrant.  The superior court judge reasonably rejected the claim as untimely and mere speculation unsupported by any evidence.  The claim is without merit.

### 3.    Ground Three – Theft from Evidence Locker

Petitioner next claims that police stole a number of items from Petitioner's residence during the search, including: marijuana, money, drugs, and drug paraphernalia.  He further argues that defense counsel was ineffective in failing to move for dismissal based on the alleged thefts.  Petitioner raised this claim in a habeas petition to the California Supreme Court, which denied the claim without comment.

Petitioner fails to state a claim for relief.  Petitioner fails to establish how the alleged thefts of money and drugs from the police evidence room had any relevance to his guilt.  The evidence of his guilt included still pictures and 107 videos of Petitioner engaging in sexual acts with his minor child.  Petitioner makes no connection between the evidence of the recordings and

the theft of drugs and money from a police evidence locker.  There is no basis for any claim that the evidence was suspect in light of the alleged thefts.  In addition, because counsel cannot be faulted for failing to raise an unmeritorious argument, defense counsel did not render ineffective assistance in failing to move for dismissal.  Rupe, 93 F.3d at 1444-45; James, 24 F.3d at 27.

### 4.     Ground Four – Bias and Recusal

Petitioner next contends that the superior court judge failed to recuse himself in connection with the evidence suppression claims because of alleged bias.  Petitioner raised the claim in a habeas petition to the California Supreme Court (Doc. 7-4 at 89-105), and the claim was denied without comment (Doc. 7-4 at 77).

#### a.  Legal Standard

To the extent that Petitioner claims the judge violated California Code of Civil Procedure § 170.6 in failing to recuse himself, the claim is not cognizable because habeas relief is unavailable for errors of state law.  Estelle, 502 U.S. at 67-68.

As to the claim that federal due process rights were violated, the Due Process Clause guarantees a criminal defendant the right to a "'fair trial in a fair tribunal' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." Bracy v. Gramley, 520 U.S. 899, 904-05 (1997) (quoting Withrow v. Larkin, 421 U.S. 35, 46 (1975)). While common law, statutes, and professional standards may give guidance for when a judge should recuse himself or herself, only violations of the Constitution will result in the reversal of a conviction on writ of habeas corpus.  Bracy, 520 U.S. at 904-05.  There are cases where a judge's implied bias creates such a high probability of actual bias as to violate the Constitution.  Larkin, 421 U.S. at 46.  For example, the Supreme Court has found that Due Process requires disqualification of a judge when the judge has direct financial interest in the outcome of a case, Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 822-24 (1986), is faced with substantial direct personal insults and denigration from a litigant, Mayberry v. Pennsylvania, 400 U.S. 455, 466 (1971), or had significant prosecutorial and adjudicatory functions in the same case, In re Murchison, 349 U.S. 133, 134-6 (1955).  These cases indicate a judge's implied bias violates the Constitution if the judge had "direct, personal [and] substantial" influences on him or some other

19

1  incentive for bias.  See Aetna, 475 U.S. at 822.

2       In attempting to make out a claim of unconstitutional bias, a plaintiff must "overcome a

3  presumption of honesty and integrity" on the part of the judge. Larkin, 421 U.S. at 47. A judge is

4  unconstitutionally biased if he has a deep-seated favoritism or antagonism that makes fair

5  judgment impossible.  Mayberry, 400 U.S. at 465-66.  Recusal is required only if the judge's bias

6  is 1) directed against a party; 2) stems from an extrajudicial source; and 3) is such as a reasonable

7  person knowing all the facts would conclude that the judge's impartiality might reasonably be

8  questioned.  Liteky v. United States, 510 U.S. 540, 545-46 (1994).  While the judge may have

9  made rulings unfavorable to a petitioner, "[j]udicial rulings alone almost never constitute a valid

10  basis" for finding bias. Id. at 555 (citing United States v. Grinnell Corp., 384 U.S. 563, 583

11  (1966)).  "In the absence of evidence of some extrajudicial source of bias or partiality, neither

12  adverse rulings nor impatient remarks are generally sufficient to overcome the presumption of

13  judicial integrity, even if those remarks are 'critical or disapproving of, or even hostile to,

14  counsel, the parties, or their cases.'"  Larson v. Palmateer, 515 F.3d 1057, 1067 (9th Cir. 2008)

15  (quoting Liteky, 510 U.S. at 555).

16       Finally, if a criminal defendant is not tried by an impartial adjudicator, the error is

17  structural, i.e., reversal is required without consideration of whether the error was harmless.

18  Neder v. United States, 527 U.S. 1, 8 (1999); Gomez v. United States, 490 U.S. 858, 876 (1989)

19  (denial of "right to an impartial adjudicator, be it judge or jury" can never be harmless error)

20  (citation omitted).

21            *b.  Analysis*

22       Petitioner fails to make a showing of judicial bias by the suppression hearing judge.

23  There is no indication that the judge had any financial interest in the outcome of Petitioner's case

24  or that he had a prosecutorial function related to Petitioner in this case or some earlier case.

25  Petitioner claims that the judge repeatedly denied his suppression motions as untimely or

26  unsupported, and that he utilized knowledge gained from authorizing the search warrant in the

27  case.  The court's actions appear to be nothing more than conduct the Supreme Court had

28  previously found inadequate to show bias:

> . . . judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses. All occurred in the course of judicial proceedings, and neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible.

Liteky, 510 U.S. at 556.  The Supreme Court has recognized that "knowledge (and the resulting attitudes) that a judge properly acquired in an earlier proceeding [is] *not* . . . 'extrajudicial' . . . . [T]rial *rulings* have a judicial *expression* rather than a judicial *source*.  They may well be based upon extrajudicial knowledge or motives . . . ." Id. at 545 (emphasis in original).  There is simply no evidence whatsoever of any judicial bias in this case that could form the basis of a constitutional claim.  Certainly, Petitioner has not shown that the state court rejection of his claim was contrary to or an unreasonable application of controlling Supreme Court authority.  The claim should be denied.

### 5.    Ground Five – Exculpatory Evidence

Petitioner claims that the prosecution failed to disclose exculpatory evidence and information that was in its possession in violation of Brady v. Maryland, 373 U.S. 83 (1963).  Petitioner raised this claim in his habeas petition to the California Supreme Court.  (Doc. 7-4 at 84, 127-130.)  The California Supreme Court denied the claim without comment.  (Doc. 7-4 at 77.)

#### a.   Legal Standard

Due process requires that the prosecution disclose exculpatory evidence within its possession.  Brady, 373 U.S. at 87; Cooper v. Brown, 510 F.3d 870, 924 (9th Cir. 2007).  This obligation encompasses the duty to discover and produce favorable evidence known to others acting on the government's behalf in the case, such as other agencies involved in the investigation or prosecution of the defendant.  Kyles v. Whitley, 514 U.S. 419, 437 (1995); United States v. Zuno–Arce, 44 F.3d 1420, 1427 (9th Cir. 1995).

There are three components of a Brady violation: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; the evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  Strickler v. Greene, 527 U.S. 263, 281–82 (1999); see also Banks v. Dretke,

540 U.S. 668, 691 (2004); Silva v. Brown, 416 F.3d 980, 985 (9th Cir. 2005).  The third element,

prejudice, is also described as materiality.  See Benn v. Lambert, 283 F.3d 1040, 1053 n. 9 (9th

Cir. 2002) (explaining that, "for Brady purposes, the two terms have come to have the same

meaning").  Evidence is material under Brady if there is a "reasonable probability that, had the

evidence been disclosed to the defense, the result of the proceeding would have been different."

Kyles, 514 U.S. at 433–34 (internal quotation marks and citation omitted)

### b.  Analysis

Petitioner merely speculates that relevant exculpatory evidence existed that was withheld

by the prosecution.  He claims he subpoenaed telephone records of witnesses A.M. and S.M., but

the telephone records he received were allegedly incomplete.  He claims he discovered that

AT&T had sent more than four thousand pages of phone records, but the CD the defense received

contained only 916 pages.  Petitioner offers no proof to support his claim that the CD was

incomplete.  In fact, Petitioner concedes his investigator stated that the 916 pages were the full

and complete set of records.

Petitioner claims the prosecution tampered with the evidence and withheld certain records

in an effort to hide the witnesses' illegal activities.  The claim is also completely unsubstantiated

and speculative.  Petitioner hypothesizes that because there were time gaps where the witnesses

were not constantly sending texts, and inconsistencies in the phone records, that records must

have been deleted.  This is pure conjecture.  He offers no proof that records were withheld.  He

also fails to explain the allegedly illegal activities in which the witnesses were involved, and how

the phone records would have demonstrated such.

Moreover, Petitioner does not state what the deleted text messages would have shown or

how they could possibly have assisted his defense.  Petitioner states that "[t]he only reason one

can make sense of, is that the tampering occurred to conceal that the prosecutor's witnesses,

[A.M.] and [S.M.] were involved with Sgt. Williams in the illegal operation that led to

petitioner's arrest." (Doc. 1 at 132.)  Again, this is pure speculation.  Petitioner merely guesses

that the evidence would have been helpful.

In sum, Petitioner fails to show that any evidence was withheld, much less that it was

exculpatory; he fails to show that the prosecution willingly or inadvertently withheld the evidence; and, he fails to show that any prejudice ensued.  Strickler, 527 U.S. at 281-82.  The claim should be denied.

### 6.   Ground Six – Lesser Sentence

Petitioner next contends that he is entitled to a lesser sentence due to new legislative changes in the penalties and punishment provisions within the California Penal Code.  This claim is not cognizable in a federal habeas action, as it is well-settled that federal habeas relief is not available to state prisoners challenging state law.  Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997) ("alleged errors in the application of state law are not cognizable in federal habeas corpus" proceedings); Sturm v. California Youth Authority, 395 F.2d 446, 448 (9th Cir. 1967) ("a state court's interpretation of its [sentencing] statute does not raise a federal question").  The claim should be denied.

### 7.   Ground Seven – Jury Confusion

Petitioner contends the jury was confused as to certain findings required for convictions, despite the court's instructions.  Petitioner alleges the jurors' confusion constituted grounds for mistrial.  This claim was raised by habeas petition to the California Supreme Court and rejected without comment.

According to the transcript, the jury was confused as to the procedure in approaching and making findings for convictions on counts five through sixteen.  (Doc. 1 at 149-156.)  The judge responded to each juror's question until satisfied that the confusion had been resolved.  Petitioner's defense attorney commented that "the court has done a fabulous job." (Doc. 1 at 155.)  The trial judge further advised the jury to bring any additional questions to his attention.  There is simply no evidence that the jurors' questions went unresolved, and there was no cause for a mistrial.  Petitioner fails to demonstrate that no fairminded jurist would agree with the state court's rejection of his claim.  It should be denied.

1    **IV.    ORDER**

2           IT IS HEREBY ORDERED that the Clerk of Court is DIRECTED to randomly assign the

3    instant matter to a district judge.

4    **V.    RECOMMENDATION**

5           Based on the foregoing, the Court RECOMMENDS that the Petition for Writ of Habeas

6    Corpus be DENIED with prejudice on the merits.

7           This Findings and Recommendation is submitted to the United States District Court Judge

8    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the

9    Local Rules of Practice for the United States District Court, Eastern District of California.  Within

10   thirty (30) days after being served with a copy of this Findings and Recommendation, any party

11   may file written objections with the Court and serve a copy on all parties.  Such a document

12   should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies

13   to the Objections shall be served and filed within fourteen (14) court days (plus three days if

14   served by mail) after service of the Objections.  The Court will then review the Magistrate

15   Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file

16   objections within the specified time may waive the right to appeal the Order of the District Court.

17   Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  This recommendation is not an order that is

18   immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to

19   Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District

20   Court's judgment.

21

22   IT IS SO ORDERED.

23   Dated:   **August 30, 2023**                          */s/ Sheila K. Oberto*

24                                                            UNITED STATES MAGISTRATE JUDGE

25

26

27

28

24